UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

| | |
|---|---|
| NATAYA V. BOLDEN, | Civil No. 3:13-cv-00224-HA |
| Plaintiff, | FINDINGS OF FACT AND CONCLUSIONS OF LAW |
| v. | |
| CITY OF PORTLAND, a municipal corporation; TODD GRADWAHL; and MEGAN BURKEEN. | |
| Defendants. | |

HAGGERTY, District Judge:

A bench trial in this matter began on April 28, 2014 and concluded on April 30, 2014. This court, upon review of the pleadings, submissions by all parties, sworn testimony of witnesses, and other evidence introduced by the parties, makes the following findings of fact and conclusions of law as required by Rule 52 of the Federal Rules of Civil Procedure:

1 - FIDINGS OF FACT AND CONCLUSIONS OF LAW

## PARTIES

1. At all times relevant hereto, plaintiff Natanya V. Bolden was an individual residing in Oregon.

2. Defendant City of Portland is a municipality in Oregon.

3. Defendants Todd Gradwahl and Meghan Burkeen are employees of the City of Portland and work as detectives for the Portland Police Bureau.

## JURISDICTION

1. This court has jurisdiction over the subject matter of these claims pursuant to 28 U.S.C. §§ 1331, 1343, and 1367.

## FINDINGS OF FACT

1. On March 30, 2012, Gradwahl opened a criminal investigation involving crimes of Promoting Prostitution, Unlawful Possession of Cocaine, Unlawful Delivery of Cocaine, and Felon in Possession of a Firearm committed by Jawuan Marsean Polk.

2. On April 24, 2012, Gradwahl applied for a search warrant to search and analyze five Facebook accounts, including the account registered to plaintiff, based on information Gradwahl obtained in his investigation of Polk. That search warrant was signed the same day.

3. On June 27, 2012, Gradwahl applied for a search warrant to search the homes of Polk's mother, Jalane Johnson, and Polk's father, Joshua Polk, Jr, based on information Gradwahl obtained in his investigation of Polk. That search warrant was signed the same day.

4. On June 27, 2012, Gradwahl and Burkeen interviewed Jalane Johnson. During that interview, Johnson stated that: (a) Polk has multiple women working for him as prostitutes; (b) the money made through prostitution is deposited into an account that she thinks was opened

by plaintiff; (c) on one occasion Johnson received money from Ashley Wheeler, who she knows to be a prostitute, and gave it to plaintiff to pay Polk's bail and attorney fees; (d) other prostitutes working for Polk give money to plaintiff, who deposits it into an account to pay Polk's bail and attorney fees.

5. On June 28, 2012, Gradwahl and Burkeen arrived at plaintiff's apartment with the intent to conduct a consensual interview and consensual search of plaintiff's apartment. The detectives first contacted plaintiff outside her house, as she spoke on the telephone. At this point plaintiff was aware that the officers had executed search warrants on the homes of Jalane Johnson and Joshua Polk, Jr. the previous day, and that Joshua Polk Jr.'s door was broken down during the warrant's execution. Gradwahl and Burkeen obtained plaintiff's consent to conduct an interview and search her apartment. Plaintiff requested that the interview and search not be conducted with her children present. The detectives drove plaintiff and her children to the home of plaintiff's friend, who supervised the children as plaintiff spoke with the detectives. The detectives interviewed plaintiff in her apartment while at least three other Portland Police officers searched plaintiff's apartment. The detectives seized a blue Aeropostale bag filled with miscellaneous documents, plaintiff's bank statements, mail from Polk to plaintiff, and a computer tower with power cord. Plaintiff was given a receipt for the property seized, and the officers left plaintiff's apartment within approximately one hour of beginning the interview and search.

6. Plaintiff's computer was used to search for jobs, children's homework, children's gaming, and general communication. The lost use of the computer required plaintiff to drive her children to the public library or her mother's house to complete homework.

7. On August 10, 2012, plaintiff arrived at the Multnomah County Detention Center

3 - FIDINGS OF FACT AND CONCLUSIONS OF LAW

(MCDC) to post bail for Polk. Plaintiff was approximately seven months pregnant at the time. As plaintiff waited in the lobby, she saw Gradwahl and Burkeen, and stood up to leave. Plaintiff attempted to pass the detectives and exit the building. The detectives initially attempted to communicate with plaintiff and, when that proved ineffective, the detectives physically prevented her from exiting MCDC. The detectives handcuffed plaintiff and placed her under arrest for promoting prostitution. As Gradwahl reached for plaintiff's pocket to seize the $8,510.00 in bail money, plaintiff twisted to the floor in an attempt to prevent the seizure of the bail money. The detectives seized the $8,510.00. No unlawful physical contact occurred during plaintiff's arrest in the lobby.

8. After placing plaintiff under arrest, the detectives escorted her to a holding cell. Before reaching the holding cell, plaintiff requested to use the bathroom and the detectives refused her request. Plaintiff remained handcuffed in the holding cell for approximately ten minutes while the detectives prepared an interview room.

9. The detectives escorted plaintiff to an interview room. Upon entering the interview room, plaintiff again requested to use the bathroom and the detectives again denied her request. Gradwahl and Burkeen interviewed plaintiff for approximately one hour and fifteen minutes. Plaintiff remained handcuffed for approximately ten minutes of the interview. In response to Burkeen's offer of water, plaintiff declined, saying that she already needed to pee.

10. Upon completion of the interview, the detectives gave plaintiff a receipt for the seized cash. Again, plaintiff requested to use the bathroom. The detectives returned plaintiff to the holding cell for a few minutes while they turned off the video recording equipment. Then, the detectives escorted her to a bathroom located on the same floor as the interview room.

Before leaving MCDC, plaintiff complained of pain in her stomach. The detectives twice asked if plaintiff wanted an ambulance and twice plaintiff declined.

11. On August 15, 2013, Polk pled guilty to, *inter alia,* two counts of promoting prostitution.

12. Plaintiff's computer was held in the Portland Police Bureau Property/Evidence Division from its seizure on June 28, 2012 until it was released to defendants' counsel on September 24, 2013. The computer was returned to plaintiff on January 24, 2014.

13. The remainder of the property seized from plaintiff, including the $8,510.00, was returned to plaintiff on April 11, 2014.

14. The annual rate of interest for money due in Oregon is nine percent pursuant to Oregon Revised Statute (O.R.S.) 82.010.

15. In reaching its findings of fact, the court also found that:

    a. Plaintiff was not credible in denying that she gave Gradwahl and Burkeen consent to enter and search her apartment on June 28, 2012.

    b. Plaintiff was not credible regarding the amount of force used during her arrest on August 10, 2012.

## CLAIMS

At the time of trial, plaintiff's remaining claims were for:

1. <u>Claim for Relief 1</u>- Unreasonable seizure of plaintiff's person in violation of the Fourth Amendment, by detaining plaintiff for questioning in her home without consent on June 28, 2012. This claim was brought against defendant Gradwahl and Burkeen.

2. <u>Claim for Relief 2</u> - Unlawful search of plaintiff's home in violation of the Fourth

5 - FIDINGS OF FACT AND CONCLUSIONS OF LAW

Amendment, by searching plaintiff's home without her consent on June 28, 2012. This claim is brought against defendants Gradwahl and Burkeen.

3. <u>Claim for Relief 3</u> - Unlawful seizure of property in violation of the Fourth Amendment on June 28, 2012. This claim is brought against defendants Gardwahl and Burkeen.

4. <u>Claim for Relief 5</u> - Unreasonable seizure of plaintiff's person in violation of the Fourth Amendment, by using excessive force when taking plaintiff into custody and leaving her handcuffed in a cell without access to a toilet on August 10, 2012. This claim is brought against defendants Gradwahl and Burkeen.

5. <u>Claim for Relief 6</u> - Unlawful seizure of property in violation of the Fourth Amendment on August 10, 2012. This claim is brought against defendants Gradwahl and Burkeen.

6. <u>Claim fo Relief 8</u> - Oregon common law detainment/false arrest/false imprisonment on June 28, 2012. This claim is brought against defendant City of Portland.

7. <u>Claim for Relief 9</u> - Oregon common law battery on August 10, 2012 in the course of arresting and detaining plaintiff. This claim is brought against defendant City of Portland.

8. <u>Claim for Relief 10</u> - Oregon common law conversion based on the seizure of property on June 28, 2012 and August 10, 2012. This claim is brought against defendant City of Portland.

**CONCLUSIONS OF LAW**

1. On June 28, 2012, defendants Gradwahl and Burkeen had probable cause to arrest plaintiff for promoting prostitution based on the statements of Jalane Johnson. Therefore, the

6 - FIDINGS OF FACT AND CONCLUSIONS OF LAW

detainment of plaintiff on June 28, 2012 did not violate the Fourth Amendment and it does not support a common law claim for detainment/false arrest/false imprisonment. Plaintiff is not entitled to judgment in her favor on Claims 1 and 8.

2. On June 28, 2012, defendants Gradwahl and Burkeen obtained plaintiff's consent to search her apartment. Therefore, the search did not violate the Fourth Amendment, and plaintiff is not entitled to judgment in her favor on Claim 2.

3. Because plaintiff consented to a search of her apartment on June 28, 2012, plaintiff's property was lawfully seized as evidence in a criminal investigation. Therefore, the initial seizure of plaintiff's property on June 28, 2012 did not violate the Fourth Amendment. However, the investigation of Polk ended when he pled guilty on August 15, 2013. The continued detainment of plaintiff's computer was unlawful between the dates of August 15, 2013 and January 24, 2014, when the computer was returned to her. The court finds that Gradwahl and Burkeen are liable for plaintiff's lost use of her computer during that period in the amount of $500 under Claim 3. The detainment of plaintiff's bank statements, blue Aeropostale bag with miscellaneous documents, jail mail, and computer power cord was unlawful between the dates of August 15, 2013 and April 11, 2014, when they were returned to her. Plaintiff suffered no injury due to the lost use of her bank statements, blue Aeropostale bag, jail mail, and computer cord.

4. Plaintiff's Claim 5 for excessive force is evaluated under the Fourth Amendment's objective reasonableness standard. *Graham v. Connor*, 490 U.S. 386, 395 (1989). To evaluate excessive force claims, the court balances "the nature and quality of the intrusion on the individuals' Fourth Amendment interests against the countervailing governmental interests at stake" under the circumstances as they existed at the time. *Id.* at 396. Fourth Amendment

7 - FIDINGS OF FACT AND CONCLUSIONS OF LAW

excessive force claims can be based on post-arrest police conduct. *Fontana v. Haskin*, 262 F.3d 871, 878 (9th Cir. 2001).

Defendants Gradwahl and Burkeen did not use excessive force in violation of the Fourth Amendment while placing plaintiff under arrest in the lobby of MCDC on August 10, 2012. The detectives had probable cause to arrest plaintiff and used minimal force in so doing.

The use of handcuffs during the arrest and for the first ten minutes of the interview did not violate the Fourth Amendment, in light of plaintiff's excited state and her initial attempt to evade the detectives. As the detectives testified, the use of handcuffs ensured the safety of the detectives as well as plaintiff, and this assurance outweighed the intrusion on plaintiff's Fourth Amendment interests.

Gradwahl's and Burkeen's denial of four requests to use the bathroom over the course of an hour and a half, knowing that plaintiff was seven months pregnant, was an unreasonable detention. While it was reasonable to deny plaintiff's initial request, because she was still in an excited state, those governmental interests cannot continue to outweigh plaintiff's Fourth Amendment interest in using the bathroom after she has calmed down, is cooperating, and presents no threat to the detectives. The court finds that $1,000 appropriately compensates plaintiff for this Fourth Amendment violation under Claim 5.

5. Based on the statements of Jalene Johnson, Gradwahl and Burkeen had probable cause to believe that the $8,510.00 bail money was the proceeds of prostitution. Therefore, the initial seizure of the $8,510.00 did not violate the Fourth Amendment, as Claim 6 pleads. However, the bail money could no longer serve as evidence against Polk after he pled guilty on August 15, 2013. Therefore, the continued detainment of plaintiff's $8,510.00 without due

8 - FIDINGS OF FACT AND CONCLUSIONS OF LAW

process was unlawful between the dates of August 15, 2013 and April 11, 2014, when the money was returned to plaintiff. Gradwahl and Burkeen owe plaintiff the interest earned on $8,510.00 at a rate of nine percent per annum for the period that it was unlawfully detained, in the total amount of $499.41.

6. Because no offensive harmful and offensive contact occurred during the arrest of plaintiff on August 10, 2012, plaintiff is not entitled to judgment in her favor on Claim 9.

7. This court need not reach Claim 10 for conversion because the rulings above adequately compensate plaintiff's injury caused by the lost use of her property.

8. In sum, plaintiff is entitled to $1,999.41 as well as costs and reasonable attorney fees.

IT IS SO ORDERED.

Dated this 5 day of May, 2014.

Ancer L. Haggerty
United States District Judge